# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

ELISABETH EPPS,

*Plaintiff-Appellee,*

v.

JONATHAN CHRISTIAN, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Colorado
No. 20-cv-1878 (Hon. R. Brooke Jackson)

## BRIEF FOR APPELLEE ELISABETH EPPS

Timothy Macdonald
Sara R. Neel
AMERICAN CIVIL LIBERTIES
  UNION OF COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
Telephone: (303) 777-5482
timothy.macdonald@aclu-co.org

Robert Reeves Anderson
Matthew J. Douglas
Brian M. Williams
Emily M. Sartin
ARNOLD & PORTER
  KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202
T: (303) 863-1000
reeves.anderson@arnoldporter.com

(Additional counsel listed in
signature block)

**Oral Argument Not Requested**

February 21, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

STATEMENT OF RELATED CASES ................................................. v

INTRODUCTION ........................................................................... v

STATEMENT OF THE ISSUES ...................................................... 4

STATEMENT OF THE CASE ......................................................... 5

    A.    Factual Background .......................................................... 5

    B.    Proceedings Below ........................................................... 8

SUMMARY OF ARGUMENT ........................................................ 9

ARGUMENT ................................................................................ 11

I.    The District Court Correctly Denied Qualified Immunity ........... 11

    A.    Officer Christian Violated Ms. Epps's Fourth Amendment Right to Be Free from Excessive Force ....................................... 12

    B.    This Court's Precedents Clearly Establish that Officer Christian's Conduct Was Unlawful ..................................... 17

II.    The District Court Did Not Abuse Its Discretion Under Rule 42 In Denying Officer Christian's Motion to Bifurcate ......................... 22

III.    The Jury's Award of Punitive Damages—Which the District Court Remitted by 80%—Was Supported by Substantial Evidence ....................... 29

CONCLUSION ............................................................................. 31

CERTIFICATE OF COMPLIANCE ............................................... 33

CERTIFICATE OF DIGITAL SUBMISSION ................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Chicago*,
No. 06 CV 4856, 2012 WL 13060050 (N.D. Ill. Nov. 2, 2012)........................28

*Anaeme v. Diagnostek, Inc.*,
164 F.3d 1275 (10th Cir. 1999) ........................................................23

*Angelo v. Armstrong World Indus., Inc.*,
11 F.3d 957 (10th Cir. 1993) ......................................................22, 29

*U.S. ex rel. Bahrani v. ConAgra, Inc.*,
624 F.3d 1275 (10th Cir. 2010) ........................................................23

*Buck v. City of Albuquerque*,
549 F.3d 1269 (10th Cir. 2008) ............................................18, 20, 21

*Burke v. Regalado*,
935 F.3d 960 (10th Cir. 2019) ..........................................................26

*Cavanaugh v. Woods Cross City*,
718 F.3d 1244 (10th Cir. 2013) ........................................................26

*ClearOne Commc'ns, Inc. v. Bowers*,
643 F.3d 735 (10th Cir. 2011) ..........................................................23

*Eisenhour v. Cnty.*,
897 F.3d 1272 (10th Cir. 2018) ........................................................31

*Est. of Melvin by & through Melvin v. City of Colo. Springs*,
No. 20-CV-00991, 2021 WL 50872 (D. Colo. Jan. 5, 2021) ................10, 23, 24

*Finch v. Rapp*,
38 F.4th 1234 ..............................................................................17

*Fogarty v. Gallegos*,
523 F.3d 1147 (10th Cir. 2008) ............................................18, 19, 20

*Graham v. Connor*,
490 U.S. 386 (1989)........................................................................13

ii

*Hardeman v. City of Albuquerque*,
377 F.3d 1106 (10th Cir. 2004) ....................................................30, 31

*Hernandez v. Wexford Health Sources, Inc.*,
No. 3:22-CV-00566, 2024 WL 4350207 (S.D. Ill. Sept. 30, 2024) ..................28

*Irizarry v. Yehia*,
38 F.4th 1282 (10th Cir. 2022) .............................................................17

*Iweha v. State of Kansas*,
121 F.4th 1208 (10th Cir. 2024) ..........................................................18

*Lund v. Henderson*,
807 F.3d 6 (1st Cir. 2015)......................................................................28

*Marshall v. Columbia Lea Reg'l Hosp.*,
474 F.3d 733 (10th Cir. 2007) .........................................................11, 13, 16

*Mullenix v. Luna*,
577 U.S. 7 (2015)...................................................................................17

*Nieto v. Kapoor*,
268 F.3d 1208 (10th Cir. 2001) .........................................................30

*Ortiz v. Jordan*,
562 U.S. 180 (2011)................................................................................13

*Packard v. Budaj*,
86 F.4th 859 (10th Cir. 2023) ..................... vi, 2, 4, 10, 13, 14, 17, 18, 19, 21, 22

*Parmar v. City of Aurora*,
No. 20-CV-2801, 2021 WL 1662719 (D. Colo. Apr. 28, 2021) ........................23

*Perea v. Baca*,
817 F.3d 1198 (10th Cir. 2016) ..........................................................14

*Reavis v. Frost*,
967 F.3d 978 (10th Cir. 2020) .............................................................17

*Rustgi v. Reams*,
536 F. Supp. 3d 802 (D. Colo. 2021)..........................................................23, 24

iii

*Smith v. Wade,*
  461 U.S. 30 (1983) ............................................................................29

*Tennessee v. Garner,*
  471 U.S. 1 (1985) ..............................................................................13

*Torres v. Madrid,*
  60 F.4th 596 (10th Cir. 2023) ...........................................................15

*Trujillo v. City of Farmington Police,*
  No. CV 13-1001, 2015 WL 13662769 (D.N.M. July 1, 2015) .........24

*United States v. Garcia,*
  74 F.4th 1073 (10th Cir. 2023) ..........................................11, 23, 27

*United States v. Landers,*
  564 F.3d 1217 (10th Cir. 2009) .........................................................23

*Valdez v. Macdonald,*
  66 F.4th 796 (10th Cir. 2023) ...........................................................13

*Valdez v. Motyka,*
  No. 15-CV-0109, 2020 WL 3963717 (D. Colo. July 13, 2020).........23

*Winnebago Tribe of Neb. v. Stovall,*
  341 F.3d 1202 (10th Cir. 2003) .........................................................23

*York v. Am. Tel. & Tel. Co.,*
  95 F.3d 948 (10th Cir. 1996) .....................................................22, 25

**Federal Rules and Other Authorities**

Fed. R. Civ. P. 42 .................................................................................22

Fed. R. Civ. P. 42(b) .............................................................................22

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed.) ...........................................................22, 23

## STATEMENT OF RELATED CASES

This Court recently decided the related appeal of *Packard v. Budaj*, 86 F.4th 859 (10th Cir. 2023). That appeal involved the claims of Zach Packard, one of Ms. Epps's co-plaintiffs below, against the City of Aurora and two of its officers related to injuries the officers caused Mr. Packard while he was peacefully protesting at the George Floyd protests. *Id.* at 862. The officers sought interlocutory review of the same district court's denial of qualified immunity, *id.* at 863, and Aurora challenged the district court's denial of summary judgment on Mr. Packard's municipal-liability claims, *id.* at 870.

This Court affirmed. *Id.* The Court held that qualified immunity was properly denied because it is clearly established law that "the deployment of less-lethal munitions on an unthreatening protester who is neither committing a serious offense nor seeking to flee is unconstitutionally excessive force." *Id.* Having concluded that the officers were not entitled to qualified immunity, the Court declined to exercise pendant jurisdiction over Aurora's appeal. *Id.*

The other related case has been partially consolidated with this appeal: *Packard v. City and County of Denver*, No. 24-1367 (10th Cir.).

## INTRODUCTION

Following the murder of George Floyd in May 2020, Elisabeth Epps joined thousands of others in downtown Denver to protest against police brutality. On May 29, Ms. Epps was livestreaming and documenting the protests as she walked toward the state Capitol Building. Ms. Epps was alone, and traffic was light. As Ms. Epps crossed the street, she trained her phone on Officer Jonathan Christian, who was standing on the lawn of the Capitol Building on the other side of the street. Without warning or provocation, Officer Christian dropped to one knee in a tactical position, took aim, and shot Ms. Epps with a PepperBall projectile—a less-lethal round filled with a powdered acid used for pain compliance. The shot left a large, painful bruise on Ms. Epps's leg, and the encounter caused Ms. Epps significant emotional distress.

As the jury heard during trial, Officer Christian's assault on Ms. Epps continued his pattern of egregious and unlawful use of force on peaceful protesters. On the first night of the protests, Officer Christian went on a tear, at one point shooting a group of 30 or 40 people with PepperBalls while several had their hands up. That same night, he sprayed a woman with OC spray; the woman was holding a sign and posed no threat. Later, Officer Christian was lamenting that the air cartridge on his PepperBall gun was exhausted when his fellow officer casually commented, "I like shooting people." Officer Christian's response? "F***, yeah."

Ms. Epps sued Officer Christian and the City and County of Denver under 42 U.S.C. § 1983 for violations of her First and Fourth Amendment rights. Ms. Epps's claims against Officer Christian and Denver were heard during a consolidated three-week trial in March 2022. The jury found for Ms. Epps on both of her claims against Denver. As for Officer Christian, the jury concluded that he had violated Ms. Epps's Fourth Amendment right to be free from excessive force but that he had not violated her First Amendment rights. The jury concluded that Ms. Epps was entitled to $250,000 in punitive damages against Officer Christian, which the district court subsequently remitted to $50,000.

Officer Christian asks this Court to relieve him from the jury's verdict for three reasons. Each is meritless.

*First*, the district court correctly denied qualified immunity at summary judgment and again at the Rule 50 stage. The jury concluded that Officer Christian violated Ms. Epps's Fourth Amendment rights when he shot her with less-lethal munitions as she filmed him while crossing the street. He cannot meet his high burden to show that the evidence supports *only* his revisionist (and self-serving) version of events. The remainder of the qualified immunity analysis is controlled by this Court's decision in *Packard v. Budaj*, 86 F.4th 859, 870 (10th Cir. 2023), which squarely held—in the context of this same lawsuit—that the law has been clearly established for over a decade that "the deployment of less-lethal munitions on an unthreatening protester

who is neither committing a serious offense nor seeking to flee is unconstitutionally excessive force." Officer Christian does not dispute that Ms. Epps was an unthreatening protester who was neither committing a serious offense nor seeking to flee when he shot her. He is not entitled to qualified immunity.

**_Second_**, the district court did not abuse its discretion when it denied Officer Christian's motion to bifurcate his trial from Denver's. District courts regularly decline to bifurcate trials involving individual officers and municipalities, which usually involve overlapping facts, issues, and evidence. This case was no different, and it was reasonable for the district court to decline bifurcation when holding two trials would waste time and resources. Officer Christian says he was prejudiced by being put on trial at the same time as Denver, but the jury's verdict shows otherwise. It ruled for Ms. Epps across the board on her claims against Denver, but on her claims against Officer Christian, it found for her only on the Fourth Amendment claim.

**_Third_**, sufficient evidence supports the jury's award of punitive damages. Whether the defendant possessed the requisite malicious intent is a jury question, and Officer Christian's pattern of egregious conduct provided ample evidence for the jury's finding. The district court already remitted the punitive damages award by 80%, and this Court should decline to nullify the jury's finding that Officer Christian's conduct should be punished and deterred.

## STATEMENT OF THE ISSUES

1. In *Packard v. Budaj*, 86 F.4th 859, 870 (10th Cir. 2023), a case involving two of Ms. Epps's co-plaintiffs below and arising from the same protests, this Court held that "[b]y May of 2020, when the incidents here occurred, it had been clearly established for (at least) twelve years that the deployment of less-lethal munitions on an unthreatening protester who is neither committing a serious offense nor seeking to flee is unconstitutionally excessive force." Here, Officer Christian concedes that when he shot Ms. Epps, she was an unthreatening protester who was neither committing a serious offense nor seeking to flee. The first question presented is whether the district court erred in denying qualified immunity to Officer Christian for his excessive use of force on Ms. Epps.

2. After being injured by Officer Christian and other unidentified DPD officers during the protests, Ms. Epps brought First and Fourth Amendment claims under § 1983 against Officer Christian in his individual capacity and against the City and County of Denver for municipal liability (predicated, in part, on Officer Christian's conduct). Her claims against both defendants involved overlapping facts, evidence, and issues. The usual practice of district courts within this Circuit is to consolidate trials involving *Monell* claims that implicate individual officers and municipalities. The second question presented is whether the district court abused its discretion in denying

Officer Christian's request to hold two separate trials—one for Ms. Epps's claims against Denver, and a second one for her related claims against Officer Christian.

3.     After a three-week trial, a jury concluded that Officer Christian violated Ms. Epps's Fourth Amendment right to be free from excessive force. The jury also concluded that Officer Christian's conduct involved an evil motive or intent, or that his conduct involved reckless or callous indifference to Ms. Epps's federally protected rights, and awarded Ms. Epps $250,000 in punitive damages. The district court concluded that sufficient evidence supported the jury's finding of punitive damages, but the court remitted the award to $50,000. The third question presented is whether Ms. Epps introduced sufficient evidence to support the jury's determination she is entitled to punitive damages.

## STATEMENT OF THE CASE

### A.     Factual Background

On May 25, 2020, George Floyd died after a Minneapolis police officer placed his knee and the weight of his body on Mr. Floyd's neck for eight minutes and forty-six seconds. Within days, millions of people around the world mobilized to mourn Mr. Floyd's death and protest against police brutality. In Denver, the protests began on May 28 and continued until June 2, 2020.

Elisabeth Epps first joined the protests around 9:00pm on May 28 near the Capitol. App.Vol.23_186:17-25, 187:18-21. Shortly after she arrived, while she was protesting and documenting the scene via livestream, officers began throwing teargas

cannisters and shooting PepperBalls into the peaceful crowd, without warning. App.Vol.23_187:24-188:5, 189:9-190:1. Ms. Epps experienced painful effects from the tear gas, including coughing, irritation to her eyes, and disorientation. App.Vol.23_192:1-14, 195:13-15; App.Vol.30_28 (Ex. 106) at 0:06:00-0:07:30. Later that same evening, while Ms. Epps was protesting peacefully in the area, officers deployed more gas and PepperBalls into the crowd. App.Vol.23_196:2-198:3. Ms. Epps once again experienced the effects of the chemical munitions. App.Vol.23_198:4-5. She left the protest shortly after. App.Vol.23_198:6-13.

Ms. Epps rejoined the protests around 9:00pm the next day, May 29, once again in the area of the Capitol. App.Vol.23_198:14-19, 199:1-16. As she walked along 14th Street, Ms. Epps encountered large clouds of gas from chemical munitions; to avoid the severe effects she had previously experienced, she crossed the street away from the large clouds and toward the Capitol Building and filmed a line of officers on the Capitol lawn. App.Vol.23_199:17-200:9. As she crossed 14th Street, one of those officers—Defendant Jonathan Christian—without warning "dropped, took a knee, and shot something into [her] leg" after pointing his weapon at her. App.Vol.23_200:10-18; App.Vol.22_75:16-76:24, 78:8-79:8, 80:3-5; *see* App.Vol.30_40 (Ex. 108) at 00:02:20-00:03:35. The PepperBall struck Ms. Epps on her calf and left a deep bruise. App.Vol.23_201:21-25, 218:21-25.



App.Vol.30_30 (Ex. 66); App.Vol.42_158 (Ex. 1250).

Alongside the physical pain, being shot by Officer Christian traumatized Ms. Epps. Before she knew which officer had shot her, she was plagued with fear around any officer: "There was a long period after May 29th where I saw him every day and every night and every interaction with a cop." App.Vol.23_202:10-12. She felt re-traumatized each time she encountered a police officer, which she did frequently in her job and life. App.Vol.24_15:16-16:25. She also experienced nightmares about Officer Christian. App.Vol.23_202:21-22.

The other assaults Ms. Epps experienced at the hands of DPD officers throughout the remainder of the protests are discussed in the brief contemporaneously filed in *Packard v. City and County of Denver*, No. 24-1367 (10th Cir.).

## B.     Proceedings Below

On June 25, 2020, Ms. Epps sued Officer Christian under 42 U.S.C. § 1983 for violating her First, Fourth, and Fourteenth Amendment rights. App.Vol.1_87-137. In the same action, Ms. Epps and six other individuals (the "Epps Plaintiffs") brought claims against the City and County of Denver and unidentified police officers. App.Vol.1_87-137. The district court subsequently consolidated the *Epps* lawsuit with claims brought by other protestors, including the other plaintiffs-appellees in a related appeal, No. 24-1367 (referred to below as the "Fitouri Plaintiffs"). App.Vol.1_142. The *Epps* and *Fitouri* claims against the Denver defendants, including Ms. Epps's claims against Officer Christian, were tried before a jury from March 7 to March 25, 2022. *See* App.Vol.1_65-67.

The jury rendered a unanimous verdict in favor of Ms. Epps and her co-plaintiffs. App.Vol.11_169-177. The jury awarded $1 million to Ms. Epps against Denver for violations of her First and Fourth Amendment rights and against Officer Christian for violating her Fourth Amendment rights only. App.Vol.11_175-76; App.Vol.12_101-02. The jury also awarded Ms. Epps $250,000 in punitive damages against Officer Christian. App.Vol.11_176. After trial, the district court remitted the punitive-damages award to $50,000. App.Vol.12_101-02.

Officer Christian moved for judgment as a matter of law or a new trial on several grounds, all of which the district court denied. *See* App.Vol.11_182-197;

8

App.Vol.12_81-103. Specifically, the district court rejected Officer Christian's arguments regarding sufficiency of the evidence Ms. Epps presented to support awards of compensatory and punitive damages and his entitlement to qualified immunity. App.Vol.12_94-97. It also found no error in the denial of Officer Christian's motion to bifurcate the claims against him from those against Denver. App.Vol.12_97-98. Furthermore, Officer Christian was not prejudiced by the denial of his bifurcation motion, because there was no indication that the jury ignored the relevant jury instructions and "lumped" together Officer Christian and Denver—in fact, the "extremely diligent" jury showed quite the opposite in its careful consideration of the claims against Officer Christian, ruling *in his favor* on Ms. Epps's First Amendment claim. App.Vol.12 at 97-98.

## SUMMARY OF ARGUMENT

**I.** The district court did not err in denying Officer Christian's bid for qualified immunity. On the first prong (proof of a constitutional violation), the jury concluded that Officer Christian violated Ms. Epps's Fourth Amendment right to be free from excessive force when he shot her with a PepperBall for crossing the street outside of a cross-walk. That verdict is well-supported by the evidence. On the second prong (clearly established law), this Court recently held in a case involving the same protests that "[b]y May of 2020, when the incidents here occurred, it had been clearly established for (at least) twelve years that the deployment of less-lethal munitions on

an unthreatening protester who is neither committing a serious offense nor seeking to flee is unconstitutionally excessive force." *Packard v. Budaj*, 86 F.4th 859, 870 (10th Cir. 2023). Officer Christian does not dispute that Ms. Epps was an unthreatening protester who was neither committing a serious offense nor seeking to flee. It was thus clearly established that Officer Christian could not, consistent with the Fourth Amendment, shoot Ms. Epps with less-lethal munitions under the circumstances here.

**II.** The district court did not abuse its discretion in denying Officer Christian's motion to bifurcate his trial from Denver's. Bifurcating individual and municipal-liability claims in *Monell* cases is "uncommon" in this Circuit, *Est. of Melvin by & through Melvin v. City of Colo. Springs*, No. 20-CV-00991, 2021 WL 50872, at *2 (D. Colo. Jan. 5, 2021), and nothing about this case warranted departing from the usual practice of holding a single trial involving the same parties, the same issues, and the same evidence.

Any purported prejudice was mitigated by the jury instructions, which explained that "one of the defendants is a police officer, and one of the defendants is a city government." App.Vol.11_146. The instructions clarified that the jury must "decide the case as to each party separately" and that "[e]ach plaintiff may only recover for any violation of his or her own constitutional rights." *Id.* The verdict leaves no doubt that the jury followed those instructions: It carefully distinguished between Ms. Epps's claims against Officer Christian and Denver—finding for Ms. Epps on her First and

Fourth Amendment claims against Denver but finding for Ms. Epps *only* on her Fourth Amendment claim against Officer Christian. The jury instructions and "mixed verdict" provide "strong evidence that the jury faithfully applied" the instructions. *United States v. Garcia*, 74 F.4th 1073, 1111 (10th Cir. 2023).

**III.**   Ample evidence supports the jury's conclusion that Officer Christian's unconstitutionally excessive use of force—and related conduct showing his culpable mental state—warranted punitive damages. The district court already remitted the punitive-damages award by 80%—from $250,000 to just $50,000. This Court should decline Officer Christian's invitation to annul the jury's award entirely.

## ARGUMENT

### I. The District Court Correctly Denied Qualified Immunity

When an officer appeals from a denial of qualified immunity "raised *after* the jury's verdict, the evidence is construed in the light most hospitable to the party that prevailed at trial." *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 739 (10th Cir. 2007) (citation omitted). That means the court considers "whether the evidence is so one-sided that defendants were entitled to prevail as a matter of law on the constitutional claim." *Id.* (citation omitted). "In this procedural posture, deference should be accorded the jury's discernible resolution of disputed factual issues." *Id.* (citation omitted).[1]

---

[1] Officer Christian could "locate[] no decision from this Court reviewing a District Court's denial of qualified immunity under Fed. R. Civ. P. 50," so he urges this Court

The district court reviewed Officer Christian's claim of qualified immunity three times, ruling against him at summary judgment (from which no appeal was taken) and twice under Rule 50. Officer Christian is not entitled to qualified immunity because, as the jury found, he violated Ms. Epps's Fourth Amendment right to be free from excessive force, and, as this Court recently held in a published opinion in a related appeal, Ms. Epps's constitutional right was clearly established over a decade before Officer Christian shot her.

## A. Officer Christian Violated Ms. Epps's Fourth Amendment Right to Be Free from Excessive Force

The jury's finding that Officer Christian violated Ms. Epps's Fourth Amendment right, this Court's deference to jury resolutions of disputed factual issues, and Officer Christian's concession that the *Graham* factors all weigh in Ms. Epps's favor make this an easy case. The evidence showed that Officer Christian shot Ms. Epps with less-lethal munitions while she was committing at most a misdemeanor, she was unthreatening, and she was not attempting to flee. On those facts, *no* use of force was reasonable under the Fourth Amendment.[2]

---

to look to out-of-circuit authority. Br. 11-12 & n.2. This Court must, of course, abide by the standard of review it announced in *Marshall*.

[2] Officer Christian argues that "[o]n the first prong, the issue is whether the official's actions *based on the evidence contained in the summary judgment record* violated the constitutional right being asserted." Br. 13 (emphasis added). That is incorrect. That may have been true if Officer Christian had filed an interlocutory appeal challenging the district court's denial of qualified immunity at summary judgment; but he didn't. "Once the case proceeds to trial, the full record developed in court supersedes the record

Courts analyze excessive-force claims under the Fourth Amendment's "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The "inquiry is holistic—weighing the 'totality of the circumstances'—and objective, disregarding officers' subjective 'underlying intent or motivation.'" *Packard v. Budaj*, 86 F.4th 859, 866 (10th Cir. 2023) (first quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), and then quoting *Graham*, 490 U.S. at 397). *Graham* identified three factors a court should consider when evaluating an excessive-force claim: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

Applying *Graham*, Officer Christian's shooting of Ms. Epps with a PepperBall was objectively unreasonable.[3]

---

existing at the time of the summary-judgment motion." *Valdez v. Macdonald*, 66 F.4th 796, 814 (10th Cir. 2023) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011)). The Court defers to "the jury's discernible resolution of disputed factual issues." *Marshall*, 474 F.3d at 739.

[3] Officer Christian argues (at 18) that "the ***Graham*** factors" are "neither applicable nor useful" to analyzing excessive-force claims involving protests. Yet Officer Christian offers no alternative framework under which this Court should assess his use of force and ultimately argues that his conduct was reasonable under *Graham*. Br. 16-20. Regardless, this Court recently rejected an officer's argument that "*Graham* is a framework ill-suited for protest cases like this" and proceeded to apply the *Graham* factors. *Packard*, 86 F.4th at 867.

**First**, the severity of Ms. Epps's "crime" is insignificant. She crossed a street outside of a cross-walk. A "minor offense—at most—supports the use of minimal force." *Packard*, 86 F.4th at 866 (quoting *Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016)). No force was warranted, let alone being shot with a chemical munition. That may be why, after Officer Christian shot her, a fellow officer told Officer Christian that their sergeant said "don't hit her." App.Vol.22_81:14-15. Indeed, Officer Christian testified that he did not "typically shoot at citizens for jaywalking." App.Vol.22_82:15-16. It might also explain why Officer Christian testified at trial that he *didn't* shoot Ms. Epps at all, but rather shot towards the ground near her, *see* App.Vol.22_84:17-22, 113:17-115:21—a revisionist history he repeats on appeal (at 6-7). The jury didn't buy it.

Officer Christian attempts (at 18) to downplay his assault as "minimal force." But the evidence showed that the shot left a massive bruise on Ms. Epps's leg, App.Vol.30_30 (Ex. 66); App.Vol.30_42 (Ex. 1250) at 158, and exposed her to "pelargonic acid," a "powdered acid that is designed to impair breathing, cause skin inflammation, tightness and pain in the chest, involuntary eye closure, [and] profuse tearing."[4] App.Vol.23_102:2-19; App.Vol.22_85:2-13. The jury's conclusion that

---

[4] Officer Christian's statement (at 18) that a PepperBall "is designed not to injure a person but to expose them to OC" is nonsensical. Exposing someone to OC—an acid used for "pain compliance" and to cause a "burning sensation," make it "difficult to breathe," and "make your eyes run"—is going to injure the targeted person.

Officer Christian used excessive force on Ms. Epps is thus well-supported by the evidence.

Officer Christian "recognizes" (at 19) that Ms. Epps's conduct amounted to at most a misdemeanor but argues that the Court must take into account "what was generally" occurring elsewhere at the Capitol that night, including other protesters "engaged in assaultive and destructive behavior." But Officer Christian concedes (at 19) that "Ms. Epps did not engage in these things." Whether the force Officer Christian used was excessive must be assessed based on the particular context in which the force was deployed, *i.e.*, the moments leading up to when he shot Ms. Epps. In the context of analyzing the reasonableness of an officer's use of force, circumstances that change over the course of mere seconds can make a difference: This Court has "repeatedly recognized that a reasonable use of force—such as when an officer is subject to a direct physical threat—may become unreasonable *even seconds later* when force persists after the threat has passed." *Torres v. Madrid*, 60 F.4th 596, 601 (10th Cir. 2023) (emphasis added). The evidence showed that Ms. Epps was by herself, nowhere near other protestors. The evidence showed that Officer Christian took a tactical position to specifically target Ms. Epps, not anyone else. Vague gestures to "others protestors" play no role in the assessment of Officer Christian's conduct.

---

App.Vol.22_64:6-65:3. Ms. Epps described her pain to the jury, which it was entitled to credit over the minimization of harm proffered by her assailant.

**Second**, Officer Christian concedes (at 19) that Ms. Epps "did not pose an immediate threat to Officer Christian or his fellow officers." That concession sinks Officer Christian's argument. He nonetheless argues (at 19) that Ms. Epps posed a danger *to herself* by crossing the street, and thus he sought to help her by shooting her. App.Vol.22_77:7-18, 79:1-3. The jury understandably rejected this absurd rationale, especially when the evidence showed that Ms. Epps was in no danger. App.Vol.23_200:3-18 (Ms. Epps's testimony that there was "not much traffic at all" and that it was a "[s]low cross"); *id.* ("No cars were honking at me, anything like that."); App.Vol.30_40 (Ex. 108) at 2:48-3:04. Officer Christian testified that he yelled at Ms. Epps to "get out of the street" *after* shooting her, App.Vol.22_80:15-20; he never explains why he couldn't have simply encouraged her to get out of the street before (and instead of) shooting her.

**Third**, Officer Christian also gives up (at 19) the third *Graham* factor, admitting that Ms. Epps "was not fleeing or attempting to evade arrest." Officer Christian's argument (at 20) that "Ms. Epps'[s] crossing the street towards the State Capitol grounds … is at least analogous conceptually to fleeing from an arresting officer" is underdeveloped and warrants no substantive response.

In sum, all three *Graham* factors weigh in Ms. Epps's favor, and Officer Christian comes nowhere close to establishing that the evidence was "so one-sided" in

his favor that this Court should substitute its judgment for the jury's. *Marshall*, 474 F.3d at 739 (citation omitted).

## B. This Court's Precedents Clearly Establish that Officer Christian's Conduct Was Unlawful

Ms. Epps's Fourth Amendment right that Officer Christian violated was clearly established long ago. *Packard*, 86 F.4th at 870.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). "The law is clearly established when a Supreme Court or Tenth Circuit precedent is on point." *Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022). Precedent is "on point" if it "involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Id.* at 1294. Ms. Epps need not identify a case with identical facts to show that the constitutional right was clearly established. *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020) ("[O]ur analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law."); *see also Finch v. Rapp*, 38 F.4th 1234, 1242-43 ("To be sure, there is no case with identical facts to those here. But we do not think it requires a court decision with identical facts to establish clearly that it is unreasonable to use deadly force when the force is totally unnecessary to restrain a suspect or to protect officers, the public, or the suspect himself." (cleaned up)).

This Court can make quick work of the second qualified-immunity prong in light of a recent precedential opinion involving the same protests, the same context, and the same qualified-immunity issue. In *Packard v. Budaj*, this Court considered several officers' claims for qualified immunity related to injuries sustained by Zach Packard and Johnathen Duran—Ms. Epps's co-Plaintiffs below. 86 F.4th at 862-63. While Mr. Packard was protesting, an officer shot Mr. Packard with a lead-filled Kevlar bag, causing significant injuries. *Id.* at 862. Mr. Duran had been filming the protests when he was shot in the groin with less-lethal munitions. *Id.* at 863.

Like Officer Christian does here, the officers in *Packard* argued that the primary precedents relied on by the district court—*Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), and *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir. 2008)—did not constitute clearly established law because neither case "present[s] facts identical to those here." *Id.* at 869. But after reviewing *Fogarty* and *Buck* in depth, this Court in *Packard* unanimously rejected the officers' arguments. *Id.* The Court held that "[b]y May of 2020, when the incidents here occurred, it had been clearly established for (at least) twelve years that the deployment of less-lethal munitions on an unthreatening protester who is neither committing a serious offense nor seeking to flee is unconstitutionally excessive force." *Id.* at 870.[5]

_____

[5] Officer Christian's failure to bring *Packard v. Budaj* to the Court's attention—a directly on-point authority—is concerning. He should not be permitted to address it for the first time in reply. *Iweha v. State of Kansas*, 121 F.4th 1208, 1235 (10th Cir. 2024)

*Packard* controls this case. It is undisputed that Officer Christian "deploy[ed] … less-lethal munitions on" Ms. Epps, "an unthreatening protester[] who [was] neither committing a serious offense nor seeking to flee." *Id.* Under *Packard*, *Fogarty*, and *Buck*, it was clearly established that Officer Christian used "unconstitutionally excessive force." *Id.*

Indeed, this is an easier case than *Packard*. In *Packard*, the Court considered evidence that Mr. Packard kicked a tear-gas canister in the direction of officers before he was shot—a fact that the defendants argued could be used to distinguish Mr. Packard's situation from the protesters in *Fogarty* and *Buck*. *Id.* at 869. Although this distinction did not carry the day in *Packard*, there are no material differences between Ms. Epps's constitutional injuries and those of the protesters in *Fogarty* and *Buck*. Each involved the same less-lethal munitions (PepperBalls). In *Fogarty*, the court considered whether police officers violated the plaintiff's clearly established Fourth Amendment right when they shot him with a PepperBall and exposed him to tear gas while he was protesting the Iraq war. 523 F.3d at 1150-53. That protest involved a crowd of 500 to 1,000 protesters. *Id.* at 1151. The crowd "flooded" the street, and a drum circle formed; officers alleged that the drummers "were inciting the crowd" and "making it difficult to communicate." 523 F.3d at 1151. Sometime after Fogarty joined

("In this Circuit, we generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived.").

the drum circle, an officer gave an order to "remove the drums." *Id.* at 1152. In the ensuing scuffle, an officer shot Fogarty "with some sort of projectile," either a "pepper ball" or "some other variety of less lethal munition." *Id.* Other officers then roughly arrested the plaintiff and "dragged him down the street." *Id.*

In denying the shooting officer's bid for qualified immunity, this Court first noted that Fogarty's alleged "disorderly conduct," a petty misdemeanor, was "the least serious of the three classes of state criminal offenses" and that "the amount of force used should have been reduced accordingly." *Id.* at 1160. In considering the threat to officers, the Court acknowledged that Fogarty's behavior may have "played a role in inciting the crowd," but concluded that it "remain[ed] far from clear that the protesters presented any immediate threat to the officers or public safety." *Id.* The Court also noted that Fogarty was not resisting or evading arrest and that the police "may have contributed to the need to use force." *Id.* at 1161. Under those circumstances, the Court ruled that the officers' "considerable" use of force was unreasonable, citing, among other things, Fogarty's allegation that "he was hit with a rifle-fired projectile." *Id.*

Later that year, this Court reached the same conclusion in *Buck v. City of Albuquerque*, 549 F.3d at 1287-90. *Buck* arose out of the same anti-war protest involved in *Fogarty*. *Id.* at 1274. During the demonstrations, one of the plaintiffs sat down in the street as a sign of protest. *Id.* at 1289. She was "shot repeatedly with pepper ball rounds," although she did not "recall feeling the impact" of the pepper balls, and the

projectiles did not leave any welts or bruises. *Id.* She lay down to show that she was not a threat but was still "repeatedly shot with pepper ball rounds." *Id.*

After concluding that her "purported infractions and the degree of potential threat that she posed to an officer's and to others' safety appeared to be nil," and that she "did not resist or evade arrest," the Court held that the officers' use of force was unreasonable. *Id.* The Court also concluded that the officer had violated clearly established law because there was "no substantial grounds for a reasonable officer to conclude that there was legitimate justification" for shooting the peaceful protestor with less-lethal munitions. *Id.* at 1290-91.[6]

Officer Christian raises (at 28-30) several factual distinctions between his assault on Ms. Epps and the officers' uses of force in *Fogarty* and *Buck*—that the

---

[6] Officer Christian argues (at 28) that both *Fogarty* and *Buck* "apply an incorrect legal framework for the clearly established qualified immunity inquiry" and that "[u]nder current Supreme Court precedent, this analysis is wrong." Even if that were true, it would not help Officer Christian. Whatever disagreements Officer Christian has about those decisions' legal reasoning, he cannot dispute that those decisions unambiguously hold that it was clearly established law in 2008 that police officers may not use less-lethal force on unthreatening protesters who have committed no serious offense. As Officer Christian acknowledges (at 14), the purpose of qualified immunity is to give officers "fair warning" that their conduct is unconstitutional. *Fogarty* and *Buck* provided that notice. *See Packard*, 86 F.4th at 869 ("*Fogarty* and *Buck* provide notice that the use of less-lethal munitions—as with any other type of pain-inflicting compliance technique—is unconstitutionally excessive force when applied to an unthreatening protester who has neither committed a serious offense nor attempted to flee. And we find the notice provided by these cases sufficient to make clear to a reasonable officer that his conduct was unlawful under these specific circumstances." (internal quotation marks and citations omitted)).

"Albuquerque protest was a single-day event, not a multi-day, multi-location event like in Denver"; that the officers in *Fogarty* and *Buck* used "more force" than Officer Christian; and that the incident with Ms. Epps was at night. These purported factual differences are "of little import under the circumstances." *Packard*, 86 F.4th at 869. At bottom, it has been clearly established for over a decade that an officer violates a peaceful protester's constitutional right to be free from excessive force by shooting them with a less-lethal weapon. That's what Officer Christian did to Ms. Epps, and he—and the officers around him—knew it was wrong.

## II.    The District Court Did Not Abuse Its Discretion Under Rule 42 In Denying Officer Christian's Motion to Bifurcate

The district court properly denied Officer Christian's motion to bifurcate. Federal Rule of Civil Procedure 42 grants district courts "wide discretion" to consolidate or separate trials. *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed.) ("It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court on the basis of the circumstances of the litigation before it.").

The trial court may consolidate actions that "involve a common question of law or fact"; or it "may order a separate trial" for "convenience, to avoid prejudice, or to

expedite and economize." Fed. R. Civ. P. 42. Still, "separation of issues for trial is not to be routinely ordered," Fed. R. Civ. P. 42(b) advisory committee's note to 1966 amendment, and "the repetitive trial of the same issue in severed claims is not to be the usual course," Wright & Miller, *supra* § 2388. The "interest[s] of efficient judicial administration"—not the "wishes of the parties"—is "controlling under the rule." *Id.*

The district court's "discretion in deciding whether to sever issues for trial … will be set aside only if clearly abused." *U.S. ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010) (quoting *Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1285 (10th Cir. 1999)). "The standard for abuse of discretion is high." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 773 (10th Cir. 2011) (quoting *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1205-06 (10th Cir. 2003)). Officer Christian must show that the court's judgment was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Garcia*, 74 F.4th at 1109 (quoting *United States v. Landers*, 564 F.3d 1217, 1224 (10th Cir. 2009)).

The district court's decision not to bifurcate the trials was sound. As an initial matter, bifurcating individual and municipal liability claims in *Monell* cases is "uncommon" in this Circuit. *Est. of Melvin*, 2021 WL 50872, at *2; *see, e.g.*, *Rustgi v. Reams*, 536 F. Supp. 3d 802, 827 (D. Colo. 2021); *Parmar v. City of Aurora*, No. 20-CV-2801, 2021 WL 1662719, at *2 (D. Colo. Apr. 28, 2021); *Valdez v. Motyka*, No. 15-CV-0109, 2020 WL 3963717, at *17 (D. Colo. July 13, 2020). Courts routinely

conclude that bifurcation prejudices *plaintiffs* through the undue burden, time, and costs of imposing two trials on the same issues and involving the same evidence (prejudice that cannot be mitigated in any other way), and that such prejudice outweighs any prejudice to individual officer defendants (which "can be mitigated through the jury instructions and verdict form"). *Est. of Melvin*, 2021 WL 50872, at *3.

Here, granting Officer Christian's motion to bifurcate would have been wildly inefficient, forcing Ms. Epps (and the Court, and another jury) to expend the time and expense of putting on two trials involving the exact same conduct. Trying individual and municipality claims together alleviates the significant time and costs trials impose on individual plaintiffs, and prevents needless and potentially prejudicial delay. *See id.*; *Rustgi*, 536 F. Supp. 3d at 827. Combining the trials was also efficient and avoided the risk of inconsistent judgments. *See Trujillo v. City of Farmington Police*, No. CV 13-1001, 2015 WL 13662769, at *1 (D.N.M. July 1, 2015) (consolidating cases against individual officers and municipality because "separate … trials would require duplicative evidence on the issue of underlying constitutional violations and could possibly result in inconsistent verdicts on whether Defendants violated Plaintiff's constitutional rights"). A "private citizen is entitled to claim the timely protection of the law," particularly when asserting "constitutional violations as grave as those alleged in this case." *Est. of Melvin*, 2021 WL 50872, at *3 (citation omitted). The district court repeatedly referenced its busy trial calendar throughout the proceedings below; it is

unclear when Ms. Epps would have gotten her second trial had the trials been bifurcated. *See, e.g.*, App.Vol.23_108:10-14.

Officer Christian argues (at 36) that the "spillover impact of all the other evidence was profound," and that he was prejudiced in the jury verdict because he was swept up in the "steady parade of video evidence involving other DPD officers and other people." But Officer Christian fails to meet his heavy burden to show that he "was significantly prejudiced" by the decision below. *York*, 95 F.3d at 958. That the jury was *not*, in fact, prejudiced by other evidence against Denver is clear for two reasons.

**First**, the jury instructions explicitly distinguished between Officer Christian and Denver: "[O]ne of the defendants is a police officer, and one of the defendants is a city government." App.Vol.11_146. The instructions directed the jury to "decide the case as to each party separately," and clarified that "[e]ach plaintiff may only recover for any violation of his or her own constitutional rights." App.Vol.11_146. The instructions made that task straightforward by providing separate instructions for the claims against Officer Christian, App.Vol.11_157 (Jury Instruction 13), and the claims against Denver, App.Vol.11_158-63 (Jury Instructions 14-18). And the jury instructions also emphasized that the proof Plaintiffs needed to adduce to prevail on their claims "differs … depending on whether the defendant is Denver or Officer Christian." App.Vol.11_152.

The verdict form likewise reflected those instructions, with separate interrogatories for Ms. Epps's claims against Officer Christian and Denver. App.Vol.11_175-76. Question 34 read as follows:

> 34. Is Denver liable for violating Elisabeth Epps's First or Fourth Amendment rights under any of the following theories as explained in Jury Instructions 15, 16 and 17?

App.Vol.11_175.

Question 35, by contrast, related exclusively to Officer Christian:

> 35. Did Plaintiff Elisabeth Epps prove, by a preponderance of the evidence, her claims against Jonathan Christian?

App.Vol.11_176.

**Second**, juries are "presume[d]" to "follow the instructions given to them." *Burke v. Regalado*, 935 F.3d 960, 1033 (10th Cir. 2019) (quoting *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1250 (10th Cir. 2013)). This appeal, though, presents a clear case where the Court need not speculate whether the jury followed the instructions. That's because the jury's verdict clearly differentiated between Officer Christian and Denver. The jury found for Ms. Epps on her First *and* Fourth Amendment claims against Denver:

**34.** Is Denver liable for violating Elisabeth Epps's First or Fourth Amendment rights under any of the following theories as explained in Jury Instructions 15, 16 and 17?

*Check all that apply. If none apply, do not check any boxes.*

| Claim | Policy/Practice/Custom (Instruction 15) | Failure to Train (Instruction 16) | Ratification (Instruction 17) |
|---|---|---|---|
| First Amendment | X | X | X |
| Fourth Amendment | X | X | X |

App.Vol.11_175. By contrast, the jury found for Ms. Epps *only* on her Fourth Amendment claim against Officer Christian:

**35.** Did Plaintiff Elisabeth Epps prove, by a preponderance of the evidence, her claims against Jonathan Christian? (*Check "Yes" or "No" for each claim.*)

| Claim | Yes | No |
|---|---|---|
| First Amendment | | X |
| Fourth Amendment | X | |

App.Vol.11_176.

If anything, the jury's careful parsing of the evidence and partial verdict in Officer Christian's favor reflects that he may have *benefitted* from being compared to the sometimes-even-more-egregious misconduct of his fellow DPD officers. This Court has held that a "mixed verdict" provides "strong evidence that the jury faithfully applied" the instructions. *Garcia*, 74 F.4th at 1111. The jury's distinction between the claims thus confirms that the jury carefully weighed and distinguished the evidence as to Officer Christian and Denver. As the trial judge below observed, the "jury was extremely diligent throughout this case," and "asked thoughtful questions and engaged

27

in a lengthy deliberation" under instructions "to consider Mr. Christian's liability separately from Denver's." App.Vol.12_98.

The two Illinois cases Officer Christian cites (at 37-38) are not to the contrary. *See Adams v. City of Chicago*, No. 06 CV 4856, 2012 WL 13060050 (N.D. Ill. Nov. 2, 2012); *Hernandez v. Wexford Health Sources, Inc.*, No. 3:22-CV-00566, 2024 WL 4350207 (S.D. Ill. Sept. 30, 2024). Those cases illustrate only that a district court could reasonably conclude that, in some circumstances, based on the particular parties and claims before it, bifurcating *Monell* claims from individual-officer claims may be the right approach. But the judges' exercise of discretion in *Adams* and *Hernandez* does not translate to an abuse of discretion in *this* case. Indeed, both decisions recognize "there is … precedent … for both granting and denying bifurcation in § 1983 cases, with the result in each instance reflecting a case-specific assessment of the advantages and disadvantages of bifurcation." *Adams*, 2012 WL 13060050, at *2 (cleaned up); *Hernandez*, 2024 WL 4350207, at *3 ("These cases reveal one thing above all: bifurcation decisions in civil rights cases are inherently fact-sensitive and dependent upon the costs and benefits of bifurcation under the unique circumstances of each case." (citation omitted)). It is thus unsurprising that Officer Christian has not identified a single court of appeals decision—in this circuit or any other—reversing a district court's order under Rule 42. *Cf. Lund v. Henderson*, 807 F.3d 6, 12 (1st Cir. 2015)

(noting appellants' inability "to cite to a case in which we have overturned a district court's grant or denial of a Rule 42 motion to consolidate or bifurcate trials").

The district court was well within its "considerable discretion" in denying the motion to bifurcate to promote judicial economy and balance potential prejudice to both Ms. Epps and Officer Christian. *Angelo*, 11 F.3d at 964.

## III. The Jury's Award of Punitive Damages—Which the District Court Remitted by 80%—Was Supported by Substantial Evidence

Officer Christian argued below both that insufficient evidence supported the jury's award of punitive damages and that the $250,000 award was constitutionally excessive. App.Vol.11_202-03, 206-11. In a careful order, the district court found that Ms. Epps introduced sufficient evidence of Officer Christian's "reckless or callous intent." App.Vol.12_96-97. But the court "agree[d] with Mr. Christian that the punitive damages awarded against him are excessive" and remitted the award by 80%—from $250,000 to $50,000—which the court concluded "would be a fair and not excessive punishment for the wrong he committed against Ms. Epps." App.Vol.12_101-102. Officer Christian offers no persuasive reason that this Court should wipe out the jury's already-remitted award.

A jury can "assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The district court's determination that

"sufficient evidence exist[ed] to support punitive damages is a question of law" subject to *de novo* review. *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1120 (10th Cir. 2004) (quoting *Nieto v. Kapoor*, 268 F.3d 1208, 1222 (10th Cir. 2001)).

As the district court found, Ms. Epps presented ample evidence that Officer Christian's unjustified shooting of an unthreatening passerby—coupled with his behavior in proximity to his assault of Ms. Epps—warranted punitive damages. For example, with respect to Officer Christian's mental state, callousness, or evil intent, he admitted to throwing multiple grenades at protestors; to shooting a woman holding a sign who was injured and posed no threat; to indiscriminately pepper spraying "30 or 40 people … standing with their hands up" while riding in a moving vehicle; to failing to provide any medical aid to protestors; and to being caught on camera agreeing with a fellow officer's statement that "I like shooting people," with an emphatic "F***, yeah." App.Vol.22_87-88, 94; App.Vol.34_112 (Ex. 739) at 05:30:38-05:30:53 (fogging unsuspecting protester), App.Vol.34_112 (Ex. 739) at 05:49:01-05:49:25 ("I like shooting people."). The jury's assessment of Officer Christian's "subjective state of mind," App.Vol.11_166, involves a nuanced consideration of *all* the evidence, including Officer Christian's demeanor and candor on the stand, as "there is no way of directly scrutinizing the workings of the human mind," App.Vol.11_153. Here, "the jury chose to credit Ms. [Epps's] evidence" showing that Officer Christian was "recklessly or callously indifferent to Ms. [Epps's] federally protected" rights,

*Hardeman*, 377 F.3d at 1121, and that assessment should not be disturbed on appeal, *see Eisenhour v. Weber Cnty.*, 897 F.3d 1272, 1282 (10th Cir. 2018) (where, as here, a court determines there is "sufficient evidence to require an instruction on punitive damages," it is "in the discretion of the jury whether to award any").

Officer Christian argues (at 40-41) that shooting an unthreatening protester in the leg is not the type of conduct that can legitimately raise an inference of egregious conduct warranting an award of punitive damages. The jury felt otherwise, and reasonably so: Shooting an innocent protester without justification with pain-compliance devices "reflect[s] actions that *should* be deterred and punished." *Hardeman*, 377 F.3d at 1121.

## CONCLUSION

Ms. Epps respectfully asks this Court to affirm the decision below.

Dated: February 21, 2025       Respectfully submitted,

/s/ *R. Reeves Anderson*

Robert Reeves Anderson
Matthew J. Douglas
Brian M. Williams
Emily M. Sartin
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202
(303) 863-1000
reeves.anderson@arnoldporter.com
matthew.douglas@arnoldporter.com
brian.williams@arnoldporter.com

31

Orion de Nevers
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942-5000
orion.denevers@arnoldporter.com

Mindy Gorin
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-7832
mindy.gorin@arnoldporter.com

Timothy Macdonald
Sara R. Neel
AMERICAN CIVIL LIBERTIES UNION OF
    COLORADO
303 East 17th Avenue, Suite 350
Denver, CO 80203
T: (303) 777-5482
timothy.macdonald@aclu-co.org
sneel@aclu-co.org

*Counsel for Epps Appellees*

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,330 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the count of Microsoft Word 365.

/s/ *R. Reeves Anderson*
Robert Reeves Anderson

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing **BRIEF FOR APPELLEE ELISABETH EPPS**:

a) All required privacy redactions have been made;

b) The ECF submission is an exact copy of the hard copy document that is being filed with the Court;

c) The ECF submission has been scanned for viruses with the most recent version of the commercial virus scanning program Checkpoint Endpoint Security (Version 80.86.0169, most recently updated July 27, 2022), and, according to the program, is free of viruses.

/s/ *R. Reeves Anderson*
Robert Reeves Anderson