UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

ELISABETH EPPS,

    Plaintiff-Appellee,

v.

JONATHAN CHRISTIAN,

    Defendant-Appellant,

and

CITY AND COUNTY OF DENVER;
KEITH VALENTINE,

Defendants.

Case No. 24-1371
(D.C. No. 1:20-CV-01878-RBJ)
(D. Colo.)

---

**REPLY BRIEF FROM APPELLANT JONATHAN CHRISTIAN**

---

**ORAL ARGUMENT IS REQUESTED**     April 4, 2025
**THIS DOCUMENT HAS BEEN CONVERTED TO NATIVE PDF**

Andrew D. Ringel, Esq.
Robert A. Weiner, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, Colorado 80202; (303) 628-3300
ringela@hallevans.com;weinerrhallevans.com

**ATTORNEYS FOR DEFENDANT-
APPELLANT JONATHAN CHRISTIAN**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................... iii

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT ........................................................................................2

  I.  THE DISTRICT COURT ERRED BY DENYING OFFICER
      CHRISTIAN QUALIFIED IMMUNITY .........................................2

    A.  Officer Christian did not Violate Plaintiff's Constitutional Rights ..........2

    B.  No Constitutional Right Violated by Officer Christian was Clearly
        Established .................................................................................8

  II.  THE CLAIMS AGAINST OFFICER CHRISTIAN SHOULD HAVE
       BEEN BIFURCATED FROM THE CLAIMS AGAINST DENVER..........15

  III.  OFFICER CHRISTIAN WAS ENTITLED TO JUDGMENT AS A
        MATTER OF LAW ON PUNITIVE DAMAGES.....................................21

CONCLUSION.......................................................................................24

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)..................24

CERTIFICATE OF PRIVACY REDACTION ........................................25

CERTIFICATE OF HARD COPY SUBMISSION .................................25

CERTIFICATE OF DIGITAL SUBMISSION .......................................25

# TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page**

*Anderson v. Creighton*,
   483 U.S. 635 (1987) .......................................................... 11

*Brosseau v. Haugen*,
   543 U.S. 194, n. 4 (2004) ..................................................... 9

*Brown v. Flowers*,
   2023 U.S.App. LEXIS 27631 (10th Cir. Oct. 18, 2023) .................................. 22

*Buck v. City of Albuquerque*,
   549 F.3d 1269 (10th Cir. 2008) ......................................................... 10

*Carey v. Piphus*,
   435 U.S. 247 (1978) .......................................................... 21

*City & Cnty. of San Francisco v. Sheehan*,
   575 U.S. 600 (2015) .......................................................... 11

*City of Escondido v. Emmons*,
   586 U.S. 38 (2019) .......................................................... 11

*City of Tahlequah v. Bond*,
   595 U.S. 9 (2021) .......................................................... 9, 11

*Estate of Larsen v. Murr*,
   511 F.3d 1255 (10th Cir. 2008) .......................................................... 4

*Estate of Melvin v. City of Colo. Springs*,
   2021 WL 50872 (D. Colo. Jan. 5, 2021) .......................................................... 16

*Fisher v. City of Las Cruces*,
   584 F.3d 888 (10th Cir. 2009) .......................................................... 12

*Fogarty v. Gallegos*,
   523 F.3d 1147 (10th Cir. 2008) .......................................................... 10

*Freeman v. Franzen*,
   695 F.2d 485 (7th Cir. 1982) .......................................................... 22

*Holland v. Harrington*,
268 F.3d 1179 (10th Cir. 2001) .................................................................. 6-7, 14

*Jolivet v. Deland*,
966 F.2d 573 (10th Cir. 1992) ........................................................................... 22

*Keup v. Sarpy Cnty.*,
709 F.Supp.3d 770 (D. Neb. 2023) .................................................................... 6

*Kisela v. Hughes*,
138 S.Ct. 1148 (2018) ....................................................................................... 11

*Kohler v. Johnson*,
396 F. App'x. 158 (5th Cir. Sept. 30, 2010) ..................................................... 22

*Luethje v. Kyle*,
2025 U.S. App. LEXIS 6385 (10th Cir. Mar. 19, 2025) ................................... 14

*Marshall v. Columbia Lea Reg'l Hosp.*,
474 F.3d 733 (10th Cir. 2007) ............................................................................ 3

*Mullenix v. Luna*,
577 U.S. 7 (2015) .............................................................................................. 11

*Ngo v. Reno Hilton Resort Corp.*,
140 F.3d 1299 (9th Cir. 1998) .......................................................................... 22

*Packard v. Budaj*,
86 F.4th 859 (10th Cir. 2023) ............................................................................. 4

*Pina v. Est. of Dominguez*,
145 S.Ct. 527 (2025) ........................................................................................... 9

*Plumhoff v. Rickard*,
572 U.S. 765 (2014) .......................................................................................... 11

*Pompeo v. Bd. of Regents*,
852 F.3d 973 (10th Cir. 2017) ..................................................................... 11-12

*Powell v. Alexander*,
391 F.3d 1 (1st Cir. 2024) ................................................................................. 22

iv

*Quintanilla v. City of Downey*,
 84 F.3d 353 (9th Cir. 1996) ........................................................... 20-21

*Rivas-Villegas*,
 595 U.S. 1 (2021) ............................................................................. 11

*Smith v. Wade*,
 461 U.S. 30 (1983) ............................................................................ 21

*Stewart v. Donges*,
 915 F.2d 572 (10th Cir. 1990) ............................................................. 9

*Surat v. Klamser*,
 52 F.4th 1261 (10th Cir. 2022) ..................................................... 13-14

*Swipies v. Kofka*,
 419 F.3d 709 (8th Cir. 2005) ............................................................. 22

*Tenorio v. Pitzer*,
 802 F.3d 1160 (10th Cir. 2015) ........................................................... 4

*Walton v. Booker*,
 745 F.3d 405 (10th Cir. 2014) ........................................................... 14

*White v. Pauly*,
 580 U.S. 73 (2017) ..................................................................... 10, 11

*Wilson v. Morgan*,
 477 F.3d 326 (6th Cir. 2007) ............................................................. 20

*Wren v. Spurlock*,
 798 F.2d 1313 (10th Cir. 1986) ......................................................... 22

*Wright v. Shepherd*,
 919 F.2d 665 (11th Cir. 1990) ........................................................... 22

**Federal Statutes**

42 U.S.C. § 1983 ................................................................. 22, 19, 21

**Rules**

10th Cir. R. 25.5 ................................................................................ 25

Fed. R. App. P. 32 ................................................................ ii, 24

Fed. R. Civ. P. 42 ................................................................ 20, 24

Fed. R. Civ. P. 50 ................................................................ 3

## SUMMARY OF ARGUMENT

First, the District Court erred in denying Officer Christian qualified immunity from Plaintiff's Fourth Amendment claim. Application of the appropriate totality of the circumstances inquiry to the facts of Officer Christian's actions on May 29, 2020, demonstrate his deployment of a single PepperBall in an area saturation manner towards Plaintiff while she was crossing the street through traffic towards the State Capitol grounds which had just been cleared by Officer Christian and the gang unit does not violate the Fourth Amendment. Additionally, the District Court erred in concluding clearly established law exists here. The Supreme Court has repeatedly instructed federal courts, particularly in the Fourth Amendment context to analyze the constitutional right at issue for clearly established law purposes with specificity and particularity, based on the specific conduct and context at issue. Here, both the District Court and the Plaintiff fail to conduct the analysis with the required specificity. A proper particularized approach demonstrates the law was not clearly established, entitling Officer Christian to qualified immunity.

Second, the District Court erred in not ordering separate trials of the claim against Officer Christian from the claims against Denver. Fundamentally, the amount and nature of the evidence presented against Denver, which had nothing to do with Officer Christian, prejudiced Officer Christian's ability to obtain a fair trial.

Plaintiff's notion that the separate jury instructions for the claims against Officer Christian and Denver somehow cures the obvious prejudice to Officer Christian from a joint trial in this unprecedented context is illusory and fails to take into account practical realities.

Third, the District Court erred in submitting punitive damages against Officer Christian to the jury. Plaintiff failed to present sufficient evidence to meet the extremely high threshold necessary to support punitive damages based on Officer Christian's actions directed at Plaintiff. There was no evidence establishing Officer Christian possessed the necessary specific intent for anyone to conclude he acted in a malicious, reckless or callous manner to the Plaintiff when he deployed the single PepperBall towards the Plaintiff. Plaintiff's argument Officer Christian's subjective intent related to Plaintiff can be proven with other events involving other people is unsupported by any precedent and does not establish any such conclusion.

## ARGUMENT

### I.  THE DISTRICT COURT ERRED BY DENYING OFFICER CHRISTIAN QUALIFIED IMMUNITY

### A. OFFICER CHRISTIAN DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS

Officer Christian argued he did not violate Plaintiff's Fourth Amendment constitutional rights by deploying a single PepperBall towards her on May 29, 2020.

[Opening Brief from Appellant Jonathan Christian ("OB"), at 16-20]. Plaintiff's arguments in response are either inapposite or unconvincing.

First, relying on *Marshall v. Columbia Lea Reg'l Hosp.,* 474 F.3d 733, 739 (10th Cir. 2007), Plaintiff argues because Officer Christian appeals from a denial of qualified immunity allegedly raised after the jury's verdict, this Court's standard of review requires deference to the jury's factual determinations. [Brief of Appellee Elisabeth Epps ("AB"), at 11]. Plaintiff is wrong. Unlike *Marshall,* where the officers did not raise qualified immunity in a Fed. R. Civ. P. 50(a) motion, *Marshall*, 474 F.3d at 738-39, Officer Christian raised qualified immunity in his Rule 50(a) motion. [Tr. 2118:7-2121:16]. *Marshall* is therefore inapposite. The denial of qualified immunity in a Rule 50(a) motion is reviewed in the same manner as other qualified immunity determinations based on applicable precedent from other Circuit Courts of Appeal. [OB, at 11-12 (citing cases from First, Second, Fifth, Eighth and Ninth Circuits)].

Second, Plaintiff criticizes Officer Christian's argument about the impropriety of rigidly applying the *Graham* factors in this context, suggesting Officer Christian did not offer an alternative framework for this Court. [AB, at 13 n. 3]. In reality, however, Officer Christian argued this Court's focus must be on the totality of the circumstances faced by Officer Christian from his perspective and not on the

3

*Graham* factors. [OB, at 17 (citing cases)].[1] A totality of the circumstances analysis was the thrust of Officer Christian's argument. [OB, at 17-18]. The *Graham* factors were only addressed because of the District Court's reliance on them. [OB, at 18 ("Further, because the District Court discussed the *Graham* factors in its analysis, Officer Christian also does despite maintaining they are neither applicable nor useful to the analysis of these circumstances."). And this Court has previously concluded in discussing similar factors outlined in *Estate of Larsen v. Murr,* 511 F.3d 1255, 1260 (10th Cir. 2008), that such factors are "only aids in making the ultimate determination [under *Graham*], which is whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Tenorio v. Pitzer,* 802 F.3d 1160, 1163 (10th Cir. 2015); *see also Couse v. Somers,* 2024 U.S. App. 5605, at *9-11 (10th Cir. Mar. 8, 2024) (describing the inquiry under *Graham* as holistic and based on the totality of the circumstances). Plaintiff's talismanic invocation of *Graham* fundamentally misapplies the correct totality of the circumstances analysis.

---

[1] Plaintiff also argues this Court in *Packard v. Budaj*, 86 F.4th 859, 867 (10th Cir. 2023), rejected the argument *Graham* was ill-suited for evaluating use of force in protest contexts. [AB, at 13 n. 3]. Plaintiff is incorrect. This Court characterized this as an argument rejected by the District Court and joined the District Court's rejection of it. However, at no time did this Court actually engage in any substantive legal analysis of the argument. Plaintiff's assertion the issue was actually decided on its merits  in *Packard* is not supported by a review of this Court's opinion.

Third, Plaintiff argues ***Graham's*** first factor supports her. [AB, at 14-15]. Predictably, instead of focusing on the totality of the circumstances Officer Christian and the other DPD officers faced on the night of May 29, 2020, Plaintiff argues Officer Christian's use of force must be evaluated based on the precise second he deployed the PepperBall. [AB, at 15]. Such an approach makes no analytical sense whatsoever. In the context of what Officer Christian was attempting to do—prevent Ms. Epps from coming onto the State Capitol grounds after the officers had just removed the crowds gathered there by deploying a PepperBall in an area saturation fashion—focusing in isolation only on what Ms. Epps was doing and her criminal activity at the time of the use of force represents an inappropriate rigid application of ***Graham*** rather than a proper totality of the circumstances analysis. Under Plaintiff's myopic approach, virtually any deployment of PepperBall or tear gas in a protest context to disperse protestors could not be justified because protestors would be at most violating municipal misdemeanors or petty offense such as obstructing traffic or engaging in unlawful protest activities. Plaintiff's argument demonstrates how rigidly applying ***Graham*** is inappropriate in this context. A practical and contextual assessment of the totality of the circumstances concerning the overall protest context, the purpose of the police actions, and the behavior of the crowds

represents an appropriate framework for considering whether Officer Christian violated Plaintiff's Fourth Amendment rights.

Fourth, Plaintiff's application of the second *Graham* prong mischaracterizes Officer Christian's argument. [AB, at 16]. Officer Christian actually argued "while Ms. Epps' actions did not pose an immediate threat to Officer Christian or his fellow officers, her actions crossing the street in the middle of the block through traffic presented a safety risk to herself and the public." [OB, at 19]. Plaintiff ignores the danger to the public posed by her actions in evaluating the propriety of Officer Christian's limited use of force. Further, Plaintiff ignores the fact Officer Christian deployed the PepperBall in an area saturation manner representing a limited use of force, and to the extent the PepperBall struck the Plaintiff, which was disputed at trial, it was a mistake because Officer Christian was aiming at the ground at Plaintiff's feet. These are both important factors in the appropriate totality of the circumstances analysis. *Compare **Keup v. Sarpy Cnty.,*** 709 F.Supp.3d 770, 793-98 (D. Neb. 2023) (describing use of PepperBall in protest context to disperse protesters and concluding such use was not a clearly established Fourth Amendment violation); ***Holland v. Harrington,*** 268 F.3d 1179, 1196 (10th Cir. 2001) (discussing the concept of police officers being able to make reasonable mistakes in terms of uses of force

and being protected by qualified immunity). These considerations further demonstrate this Court should reject a rigid application of ***Graham*** in this context.

Fifth, Plaintiff argues Officer Christian concedes the third ***Graham*** factor favors Ms. Epps because she was not fleeing or attempting to evade arrest. [AB, at 16]. Again, Plaintiff both ignores Officer Christian's actual argument and the totality of the circumstances. While it is correct Ms. Epps was not fleeing and was not evading arrest, it represents an incomplete analysis to focus only on these undisputed facts. Rather, this Court should evaluate the reasonableness of Officer Christian's actions based on all the facts including the fact his unit was on the State Capitol grounds to remove people from those grounds and keep them off the grounds, and the fact Plaintiff crossing the street towards the grounds was inconsistent with this operational goal.

In sum, instead of rigidly deploying ***Graham's*** three factors to evaluate the objective reasonableness of Officer Christian's actions, this Court should evaluate the totality of the circumstances of what was occurring on May 29, 2020. When one does so, Officer Christian's actions concerning the Plaintiff were objectively reasonable. A proper totality of the circumstances analysis considers the following facts: (1) on May 29, 2020, large crowds were on the State Capitol grounds; (2) Officer Christian and the gang unit he was with were deployed to disperse the crowds

of people congregating on the State Capitol grounds and had recently finished this task; (3) the gang unit had been directed to keep people from returning to the State Capitol grounds; (4) Officer Christian observed Plaintiff crossing in the middle of the street through ongoing traffic towards the State Capitol grounds; and (5) Officer Christian deployed a single PepperBall in an area saturation manner aiming at Plaintiff's feet attempting to cause Plaintiff to not continue moving towards the State Capitol grounds and leave the street. These facts, all supported by the record before the District Court at trial, demonstrate Officer Christian's actions were objectively reasonable under the totality of the circumstances and did not violate Plaintiff's Fourth Amendment constitutional rights.

### B.  NO CONSTITUTIONAL RIGHT VIOLATED BY OFFICER CHRISTIAN WAS CLEARLY ESTABLISHED

Officer Christian argued his actions did not violate clearly established law and the two cases the District Court relied upon in concluding otherwise were factually and legally distinguishable. [OB, at 20-33]. Rather than engaging with Officer Christian's qualified immunity argument based on the specific facts at issue concerning his interactions with the Plaintiff on May 29, 2020, Plaintiff's argument focuses on irrelevant precedent, casts the constitutional right at issue at much too high a level of generality, and ignores the proper qualified immunity analysis mandated by the Supreme Court.  Plaintiff's analysis of the clearly established prong

of qualified immunity is just plain wrong and must be squarely rejected by this Court.[2]

Plaintiff relies on this Court's decision in *Packard* as creating clearly established law and criticizes Officer Christian for not citing and discussing *Packard*. [AB, at 18]. Both points are wrong. Initially, Officer Christian did not discuss *Packard* because this Court decision post-dates the conduct at issue and therefore cannot create clearly established law as this Court recognized 35 years ago. *See Stewart v. Donges,* 915 F.2d 572, 581 (10th Cir. 1990) ("Although the parties devote large portions of their briefs to a discussion of cases decided after the events at issue took place, in determining whether defendant violated plaintiff's clearly established rights, we may consider only those decisions decided prior to the allegedly unlawful arrest of plaintiff.").[3] Officer Christian also did not cite *Packard*

---

[2] Officer Christian in his Opening Brief set forth the applicable law on qualified immunity at length. [OB, at 12-15]. Officer Christian also extensively analyzed the clearly established prong in his Opening Brief. [OB, at 20-33]. Officer Christian's analysis, not the Plaintiff's, represents the correct analytical approach to the qualified immunity clearly established prong issue.

[3] The Supreme Court has also recognized decisions post-dating the events at issue are inappropriate for consideration of whether clearly established law exists at the time of the events. *See, e.g., City of Tahlequah v. Bond,* 595 U.S. 9, 13 (2021) (Reversing this Court and noting "*Estate of Ceballos,* decided after the shooting at issue, is of no use in the clearly established inquiry."); *Brosseau v. Haugen,* 543 U.S. 194, 200, n. 4 (2004) (noting decisions post-dating the conduct "of course, could not have given fair notice to Brosseau and are of no use in the clearly

because the District Court did not rely on the decision in its clearly established law analysis. Based on these considerations, there was no reason for Officer Christian to cite *Packard*. Contrary to Plaintiff's assertion, because it post-dates the events here by several years, *Packard* simply does not and cannot "control[] this case." [AB, at 19].

Plaintiff's effort to utilize *Packard*'s interpretation of *Fogarty v. Gallegos,* 523 F.3d 1147 (10th Cir. 2008), and *Buck v. City of Albuquerque,* 549 F.3d 1269 (10th Cir. 2008), and its conclusions about clearly established law based on those decisions ignores binding qualified immunity precedent. Plaintiff broadly asserts *Packard, Fogarty,* and *Buck* clearly establish it is a constitutional violation for Officer Christian to deploy less-lethal munitions on Ms. Epps as an unthreatening protestor who was neither committing a serious offense nor seeking to flee. [AB, at 19]. However, this formulation of clearly established law casts the constitutional right at issue too generally and fails to acknowledge the Supreme Court's and this Court's mandate of analyzing clearly established law based on the specific facts of the case before this Court. Initially, the Supreme Court has repeatedly instructed lower courts to analyze the law for clearly established purposes based on the specific

---

established inquiry."); *Pina v. Est. of Dominguez,* 145 S.Ct. 527 (2025) (Alito, J. dissenting from denial of certiorari) (criticizing Ninth Circuit for relying on decision post-dating events at issue as creating clearly established law).

10

facts at issue. The discussion in ***White v. Pauly,*** 580 U.S. 73 (2017), when the

Supreme Court reversed this Court, provides one of many examples of the Supreme

Court's admonitions:

> Today, it is again necessary to reiterate the longstanding
> principle that clearly established law should not be defined at a high
> level of generality. As this Court explained decades ago, the clearly
> established law must be particularized to the facts of the case.
> Otherwise, plaintiffs would be able to convert the rule of qualified
> immunity into a rule of unqualified liability simply be alleging violation
> of extremely abstract rights.

***Id.*** at 79 (citations and internal quotation marks omitted and cleaned up). Since

***White***, the Supreme Court has continued to emphasize this point. *See, e.g.,* ***Rivas-***

***Villegas,*** 595 U.S. 1, 5 (2021); ***City of Escondido v. Emmons,*** 586 U.S. 38, 42

(2019).[4] Moreover, the Supreme Court has also repeatedly explained the specificity

requirement tailored to the facts of the case is of special importance in the Fourth

Amendment context including evaluating whether police officers have used

excessive force. ***City of Tahlequah v. Bond,*** 595 U.S. 9, 12-13 (2021); ***Kisela v.***

***Hughes,*** 138 S.Ct. 1148, 1153 (2018); ***Mullenix v. Luna,*** 577 U.S. 7, 12 (2015).

---

[4] The Supreme Court has focused on the requirement clearly established precedent be specific and particularized in numerous additional cases over many years. *See, e.g.,* ***City & Cnty. of San Francisco v. Sheehan,*** 575 U.S. 600, 613-14 (2015); ***Plumhoff v. Rickard,*** 572 U.S. 765, 779 (2014); ***Ashcorft v. al-Kidd,*** 563 U.S. 731, 742 (2011); ***Anderson v. Creighton,*** 483 U.S. 635, 640 (1987).

Similarly, this Court has also repeatedly emphasized the importance of conducting the clearly established law inquiry based on the specific facts of the case, particularly in the Fourth Amendment context. [OB, at 15 (citing cases)]. *See also* ***Pompeo v. Bd. of Regents,*** 852 F.3d 973, 981-82 (10th Cir. 2017) ("Instead, we must ask whether the violative nature of the particular conduct is clearly established."; cleaned up); ***Fisher v. City of Las Cruces,*** 584 F.3d 888, 900 (10th Cir. 2009) ("The next question is whether the right at issue was clearly established at the time of the alleged unlawful incident. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."; cleaned up).

All these precedents demonstrate an appropriate analysis under the clearly established qualified immunity prong requires this Court to analyze the specific facts of what Officer Christian did on May 29, 2020, and determine whether existing precedent as of that date clearly established the law. Critically, clearly established law cannot be framed generally, as both the District Court and the Plaintiff do, as being about whether a police officer violates the Fourth Amendment by using a less-lethal munition like PepperBall on a non-violent protestor who does not pose a threat and is not attempting to flee the officer. If cast at this high level of generality, qualified immunity would be overcome in all protest related uses of force unless someone posed a direct, active threat to the safety of the responding officers or the

public. Under Plaintiff's worldview, any use of PepperBall, tear gas, or oleoresin capsicum spray impacting non-violent protestors would violate clearly established law. Instead of a close and careful analysis of the actual facts involved in any specific case as required by the Supreme Court, according to Plaintiff, it is enough this Court has found in some specific factual contexts the use of force against non-violent protestors violates the Fourth Amendment. This is not the law.

Instead, as Officer Christian did at length, the proper analysis requires comparison of the facts here with the facts of *Fogarty* and *Buck*. Any such comparison demonstrates the factual incongruity between the facts here and those in this Court's earlier decisions. [OB, at 28-31]. In a single paragraph, Plaintiff half-heartedly argues the factual distinctions drawn by Officer Christian are of little import. [AB, at 21-22]. Plaintiff's refusal to engage with any of the actual details of Officer Christian's factual analysis reveals Plaintiff's effort to rely on the general proposition Plaintiff draws from *Fogarty* and *Buck* and not an actual factual comparison. However, the precedent from the Supreme Court and this Court discussed above require otherwise.

Plaintiff claims *Fogarty* and *Buck* provide notice to Officer Christian his use of the less-lethal munition of PepperBall was unconstitutional because Plaintiff was non-threatening, did not commit a serious criminal offense, and was not fleeing.

13

[AB, at 21 n. 6]. This formulation of the constitutional right at issue is much too general. The proper approach to the clearly established inquiry defines the right with particularity based on the actual facts of the case. *Compare* **Surat v. Klamser,** 52 F.4th 1261, 1277 (10th Cir. 2022) ("In April 2017, a reasonable officer would not have known that using a takedown maneuver to throw Ms. Surat to the ground while she was resisting arrest for a non-violent misdemeanor and not posing an immediate danger to Officer Klamser would violate the Fourth Amendment."); **Luethje v. Kyle,** 2025 U.S. App. LEXIS 6385, at *36 (10th Cir. Mar. 19, 2025) ("It was clearly established in February 2022 that it would constitute excessive force to use a police canine to arrest and then continue to bite a non-resisting, non-fleeing suspect."); **Walton v. Booker,** 745 F.3d 405, 434 (10th Cir. 2014) ("Here, the contours of the right are clearly established such that any reasonable officer in the Defendants' position (and with their training) would have known that failing to check Mr. Booker's vital signs, perform CPR, or seek medical care for three minutes when he was limp and unconscious as a result of the Defendants' use of force could violate the constitution."); **Holland,** 268 F.3d at 1189 (agreeing with formulation of plaintiff "cannot show that a reasonable officer would have known on April 16, 1996 that the decision to employ a SWAT team to execute a misdemeanor warrant in and of itself would violate plaintiff-appellees' Fourth Amendment rights"). In contrast,

Plaintiff's framing of the right at issue fails to focus on the specific and particularized facts at issue here.

Finally, Officer Christian argued in the alternative he was entitled to qualified immunity because at most his deployment of PepperBall at the Plaintiff constituted a reasonable mistake. [OB, at 32-33]. Plaintiff fails to respond to this argument. [AB, at 17-22]. This provides an alternative basis for this Court to grant Officer Christian qualified immunity here.

## II. THE CLAIMS AGAINST OFFICER CHRISTIAN SHOULD HAVE BEEN BIFURCATED FROM THE CLAIMS AGAINST DENVER

Officer Christian argued the District Court abused its discretion in failing to bifurcate the claims against him from the claims against Denver. [OB, at 33-38]. The gravamen of Officer Christian's argument was the following paragraph describing the evidence presented at trial:

> As the only individual Defendant at trial, Officer Christian was distinctly prejudiced by the combined trial of all Plaintiffs' claims against Denver. Of all the numerous witnesses testifying only two— Ms. Epps and Officer Christian—testified about what occurred on May 29, 2020, at 9:00 p.m. Neither of Plaintiffs' experts testified about Officer Christian or the event involving him and Plaintiff. Only a handful of exhibits related to the events involving Plaintiff and Officer Christian. The vast majority of the testimony and documentary evidence presented a (sic) trial had nothing to do with Officer Christian or Plaintiff's claims against him. Review of the trial transcript in this matters reveals the May 29, 2020, incident was only discussed in part of Ms. Epps' and Officer Christian's testimony consisting of 32 pages. [Tr. 1475:15-1486:25, 1513:19-20, 1533:16-1536:1 (Christian); Tr.

1848:20-1853:20, 1903:11-1910:3 (Epps)]. This was only a small fraction of the overall presentation at trial. The spillover impact of all the other evidence was profound. Most particularly, the steady parade of video evidence involving other DPD officers and other people (both other Plaintiffs and others) and the allegation all those actions were caused by the failure of Denver itself was profoundly prejudicial to Officer Christian. Plaintiffs' expert, Norman Stamper, who was used to present most of the video evidence, did not mention Officer Christian, Ms. Epps or the May 29, 2020, event despite testifying many hours. [Tr. 392:23-668:22]. None of his testimony and none of the videos presented during Mr. Stamper's testimony was relevant to the claims against Officer Christian and none of them would have been properly admitted in a trial properly focused on Plaintiff's claim against Officer Christian. Instead of focusing on the Plaintiff's claims against Officer Christian, the totality of the evidence presented (sic) the trial focused on other acts involving DPD, other Plaintiffs, the general public, and the customers, policies and procedures of Denver. Moreover, Plaintiffs introduced other incidents during the protest involving Officer Christian which would likely have not been admitted in the absence of a joint trial. No review of the trial transcript and evidence presented as a whole supports any other conclusion than the trial was largely not about Plaintiff's claims against Officer Christian.

[OB, at 36-37]. Critically, in challenging Officer Christian's argument, Plaintiff contests none of the above. [AB, at 22-28]. None of Plaintiff's arguments undermine Officer Christian's argument or the conclusion the District Court erred.

First, citing only four District of Colorado cases, Plaintiff asserts separate trials for individual and municipal liability cases is "uncommon" in the Tenth Circuit. [AB, at 23]. However, this Court has never so held. Plaintiff's cases discuss it being "uncommon" in the District of Colorado to order separate trials. *See, e.g.,* ***Estate of Melvin v. City of Colo. Springs,*** 2021 WL 50872, at *5 (D. Colo. Jan. 5,

2021) ("It is evident from the briefing on the instant Motion, as well as this Court's experience and independent legal research, that the relief Defendants urge this Court to grant herein is uncommon in this jurisdiction.").

Second, Plaintiff argues it would have been inefficient to hold separate trials. [AB, at 24-25]. Not so. As Officer Christian outlined, the quantum of evidence needed to litigate Plaintiff's claims against him was very little in comparison to the evidence presented to litigate all of the Plaintiffs' claims against Denver. The actual trial experience belies Plaintiffs' argument.

Third, Plaintiff argues the jury instructions differentiating between the claims against Officer Christian and the claims against Denver were sufficient to avoid any prejudice to Officer Christian. Plaintiff's argument avoids the reality of the different evidence actually presented at trial. [OB, at 35-36]. For example, in evaluating Officer Christian's argument, this Court should review the testimony of Mr. Stamper and the video evidence presented during his testimony, none of which had anything whatsoever to do with Officer Christian. [Tr. 392:23-668:22]. This evidence served to present the jury with evidence of alleged misconduct by numerous of Officer Christian's fellow DPD officers creating the unmistakable prospect of the jury considering all the evidence in determining liability against both Denver and Officer Christian. Similarly, had this matter been litigated as only the Plaintiff's claims

17

against Officer Christian, the video evidence presented by Plaintiffs concerning Officer Christian's interactions under other circumstances would not have been admitted at trial. Overall, a trial focused on the events of May 29, 2020, involving Officer Christian and Ms. Epps would have properly focused the jury's attention on the claim against Officer Christian separate and apart from both Plaintiff's and the other Plaintiffs' claims against Denver, none of which involved Officer Christian. Plaintiff's bromide the jury followed the jury instructions and separately considered the Plaintiff's claims against Officer Christian ignores the actual context of the evidence presented at trial and the inescapable prejudice Officer Christian suffered based on the joint trial.

Fourth, Plaintiff suggests the jury's finding of no liability on Plaintiff's First Amendment claim somehow demonstrates the jury appropriately only considered evidence relevant to Plaintiff's claims against Officer Christian in determining his liability. Again, a focus on the actual evidence and circumstances of the trial dictates otherwise. Plaintiff's First Amendment claim against Officer Christian was premised on her filming what was occurring around her on her cell phone at the time Officer Christian deployed the PepperBall. Officer Christian denied he saw Ms. Epps filming and there was no contrary evidence presented other than counsel's argument Officer Christian was close enough to see the Plaintiff's cell phone

ostensibly in a filming position. The jury's verdict on the First Amendment claim is explained by these basic facts. Nothing in the jury's verdict, however, actually demonstrates the jury only considered the events of May 29, 2020, in finding Officer Christian liable on Plaintiff's separate Fourth Amendment claim. Indeed, the verdict, as argued by Plaintiffs and interpreted by the District Court, awarded Ms. Epps $1,000,000.00 in compensatory damages against Officer Christian and Denver jointly and severally. [App. Vol. II, 175-76]. This occurred despite Ms. Epps litigating multiple other incidents involving many different officers for her claim against Denver most of which were demonstrably more significant in their impact on Ms. Epps than the single PepperBall incident involving Officer Christian. Contrary to Plaintiff's argument, the actual damages verdict strongly supports the conclusion the jury did not actually differentiate between the damages caused to Ms. Epps by Officer Christian from the damages caused to her by Denver.

Fifth, Plaintiff attempts to distinguish the precedent relied upon by Officer Christian by suggesting the issue is whether the District Court appropriately denied separate trials in this case, not what those courts did in their cases. [AB, at 28]. Officer Christian agrees the determination whether to order separate trials is case-specific. However, Plaintiffs' argument essentially boils down to the proposition it is never an abuse of discretion for a district court not to order separate trials in a

multi-party 42 U.S.C. § 1983 police civil rights case. That is not the law. Circumstances exist where the prejudice to an individual defendant from a joint trial is evident and requires separate trials as the cases cited by Officer Christian demonstrate. [OB, at 37-38].

Sixth, Plaintiff criticizes Officer Christian for not citing a Circuit Court of Appeals decision reversing a district court for not ordering bifurcation under Fed. R. Civ. P. 42. [AB, at 28-29]. Initially, Officer Christian cited two Circuit decisions affirming a district court's separate trials order under Rule 42. [OB, at 35 (citing *Lund v. Henderson,* 807 F.3d 7, 12 (1st Cir. 2015); *Wilson v. Morgan,* 477 F.3d 326, 340 (6th Cir. 2007)]. Under Plaintiff's misplaced logic, the absence of a decision reversing a district court's denial of a separate trials motion effectively makes the decision unreviewable on appeal. Again, that is not the law. No question exists the trial in this case was unique. The vast amount of evidence relevant to and presented concerning Denver's liability here in comparison to the small portion of the evidence devoted to Plaintiff's claims against Officer Christian makes this a case where separate trials under Rule 42 was warranted and the District Court's denial of Officer Christian's request constitutes error. *Compare Quintanilla v. City of Downey,* 84 F.3d 353, 355 (9th Cir. 1996) (affirming separate trials order and noting as a result the exclusion of "any evidence of police dog use in other situations" which "included

graphic photographs, from unrelated cases, of police dog bite victims; medical summaries, prepared for an unrelated case, of persons bitten by police dogs; a videotape of a police dog attack in a different case, and a police dog training videotape."). The evidence presented at this trial not involving Officer Christian was more significant and more problematic than the evidence warranting bifurcation in *Quintanilla*.

### III. OFFICER CHRISTIAN WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PUNITIVE DAMAGES

Officer Christian argued Plaintiff failed to present sufficient evidence to support the conclusion he possessed the requisite intent to justify punitive damages. [OB, at 40-41]. Plaintiff challenges this argument by focusing on evidence concerning Officer Christian's conduct related to other protestors during other events during his deployment during the multi-day response to the protest. [AB, at 30-31]. However, the Supreme Court's punitive damages analysis for 42 U.S.C. § 1983 claims focuses only on conduct directed at the plaintiff, not other conduct of the defendant. *See, e.g., Smith v. Wade,* 461 U.S. 30, 56 (1983) ("Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law."); *Carey v. Piphus,* 435 U.S. 247, 257 n. 11 (1978) ("The District Court

specifically found that petitioners did not act with a malicious intention to deprive respondents of their rights or to do them other injury."). This Court's punitive damages analysis also focuses on evidence related to the defendant's intent concerning the violation of the plaintiff's constitutional rights, not based on other events involving other people. *See, e.g., Jolivet v. Deland,* 966 F.2d 573, 577 (10th Cir. 1992) (focusing on evidence of malice towards plaintiff); *Wren v. Spurlock,* 798 F.2d 1313, 1322 (10th Cir. 1986) (analysis of whether sufficient evidence existed to determine whether defendant acted recklessly or in callous disregard of the plaintiff's rights); *Brown v. Flowers,* 2023 U.S.App. LEXIS 27631, at *14-16 (10th Cir. Oct. 18, 2023) (same).[5] Plaintiff offers no precedent allowing evidence concerning other events involving other people to establish the subjective intent necessary for punitive damages for violation of the Plaintiff's constitutional rights. Assessment of Officer Christian's intent must be based on his actions concerning

---

[5]    Other Circuit Courts of Appeal also focus on evidence related to demonstrating the defendant's intent to violate the plaintiff's rights based on the actions taken towards the plaintiff and not others to support a punitive damages award pursuant to 42 U.S.C. § 1983. *See, e.g., Powell v. Alexander,* 391 F.3d 1, 18-21 (1st Cir. 2024); *Kohler v. Johnson,* 396 F. App'x. 158, 161-62 (5th Cir. Sept. 30, 2010); *Freeman v. Franzen,* 695 F.2d 485, 490 (7th Cir. 1982); *Swipies v. Kofka,* 419 F.3d 709, 717-19 (8th Cir. 2005); *Ngo v. Reno Hilton Resort Corp.,* 140 F.3d 1299, 1304-5 (9th Cir. 1998) (doing so in 42 U.S.C. § 1981 and Title VII discrimination claim after discussing and applying *Smith*); *Wright v. Shepherd,* 919 F.2d 665, 670-71 (11th Cir. 1990).

Plaintiff, not his actions involving other people at other times and other places. Plaintiff can only establish Officer Christian's intent to violate Plaintiff's constitutional rights based on such evidence, not general evidence concerning Officer Christian's overall activities responding to the protest. Here, based on the lack of evidence of Officer Christian's subjective intent concerning his deployment of the PepperBall towards Plaintiff on May 29, 2020, Plaintiff failed to meet the extremely high punitive damages threshold under *Smith* and its progeny, and therefore it was error by the District Court to allow the jury to consider punitive damages.

Moreover, Officer Christian's actions and statements towards others during his response to the protest also do not factually establish his specific intent necessary to support a punitive damages award based on his actions related to the Plaintiff on May 29, 2020, at 9:00 p.m. Officer Christian testified about his actions related to the Plaintiff. [OB, at 7-8]. None of the evidence Plaintiff raises disputes or undermines Officer Christian's description of his intent related to the Plaintiff. None of the other conduct identified by Plaintiff involved the deployment of a PepperBall. None involved the use of a PepperBall for area saturation. None involved circumstances even remotely analogous to Officer Christian's actions towards Plaintiff. No matter the Plaintiff's, the District Court's, the jury's or this Court's assessment of Officer

Christian's other conduct in responding to the protest involving other protestors at other times and other locations, such evidence simply does not and cannot establish Officer Christian's subjective intent on May 29, 2020, when he deployed the single PepperBall towards Plaintiff. Ultimately, based on the evidence concerning Officer Christian's actual intent contained in the trial record, the District Court erred in determining there was sufficient evidence to allow the jury to consider an award of punitive damages against Officer Christian.

## <u>CONCLUSION</u>

In conclusion, based on the foregoing arguments and authorities, as well as the arguments and authorities presented in his Opening Brief, Defendant-Appellant Jonathan Christian respectfully requests this Court reverse the District Court's denial of his qualified immunity, alternatively reverse the verdict against him based on the District Court's improper failure to order a separate trial of the claims against him under Fed. R. Civ. P. 42, alternatively vacate the award of punitive damages, and enter all such additional relief as this Court deems just and proper.

## **CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

The undersigned hereby certifies this Opening Brief is proportionally spaced and is printed in the Times Roman Font with a point size 14 and contains 5,357 words. I relied on my word processor (Microsoft Word) to obtain the count. This

word count excludes those sections not appropriately included in the word count pursuant to Fed. R. App. P. 32(a)(7)(B)(ii).

## CERTIFICATE OF PRIVACY REDACTIONS

The undersigned hereby certifies this Opening Brief contains all required privacy redactions pursuant to 10th Cir. R. 25.5 (there are none).

## CERTIFICATE REGARDING HARD COPIES OF BRIEF

Pursuant to 10th Cir. R. 31.5, the undersigned hereby certifies readiness to submit the hard copies of this Reply Brief should the Court require the same.

## CERTIFICATION OF DIGITAL SUBMISSION

The undersigned hereby certifies that this document is submitted in Digital PDF and has been scanned for viruses with Sophos End Point Security (updated daily), and is free of viruses.

Respectfully submitted,

s/ *Andrew D. Ringel*
Andrew D. Ringel, Esq.
Robert A. Weiner, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300, Denver, CO 80202
303-628-3300 /Fax: 303-628-3368
ringela@hallevans.com
weinerr@hallevans.com

**ATTORNEYS FOR DEFENDANT-APPELLANT JONATHAN CHRISTIAN**

25

## **CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on the 4th day of April 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter.

s/ *Elizabeth Miller*                .
Elizabeth Miller, Legal Assistant
Hall & Evans, L.L.C.